STATE v. GEORGIA PROCTOR.

[59 South. 890.]

1. HOMICIDE. *Abortion.* Code 1906, *sections* 1233, 1234, 1235.

Under Code 1906, section 1233, providing that the killing of a human being by accused while engaged in the perpetration of a crime shall be manslaughter, a defendant who performed an operation on a pregnant woman to procure a miscarriage and the woman died in consequence thereof, was guilty of manslaughter, since the crime he was endeavoring to commit was the killing of an unborn child, which if accomplished would have been manslaughter under Code 1906, section 1235.

2. SAME.

In such case section 1234, Code 1906, making the willful killing of an unborn child by injury to its mother manslaughter, has no application.

APPEAL from the circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

Georgia Proctor was acquitted of a charge of murder and the state appeals.

The facts are fully stated in the opinion of the court.

*Frank Johnston,* assistant attorney-general, for the state.

The question presented by this record on the ruling is whether as a general proposition this crime of abor-

tion resulting in the death of the woman, Carrie Hall-bach, is murder or manslaughter.

I respectfully submit to the court that under our stat-ute on the subject of abortion, which makes it a felony, that where the death of a woman is caused by an abortion unlawfully produced, this constitutes the crime of mur-der.

In the *State* v. *Moore*, 25 Iowa, 128, in which JOHN L. DILLON delivered the opinion of the court in announcing the common law rule on the subject declared that an abortion was an unlawful act at common law, and where the death of a woman was the result of a criminal abor-tion, that the crime was murder. So, after announcing the common law rule on the subject, Judge DILLON said that under the Iowa statute that crime was reduced from murder in the first degree to murder in the second de-gree.

Professor Wharton in his third edition of his work on Homicide, says, that at common law an attempt to ef-fect an abortion whether the child *in utero* was quick or not, and where that abortion resulted in the death of the woman, that the crime was murder, or at least man-slaughter. Wharton's Homicide (3 Ed.), 592.

That general proposition is subdivided into two dis-tinct propositions or classifications: First. It was mur-der if the agencies used were dangerous to human life. Second. It was manslaughter if the agencies employed were not such as are usually regarded as dangerous to human life. Wharton on Homicide, sec. 377.

As authority for this doctrine of the common law on the subject, I respectfully refer the court to the follow-ing cases: *People* v. *Seaman*, 107 Mich. 348; *State* v. *Glass*, 5 Ore. 73; *Smith* v. *State*, 33 Me. 48.

I now beg leave to submit to the court the statutory provisions on the subject. Wharton declares the rule to be that whenever a statute makes an abortion a felony, and the abortion results in the death of a woman, that

the crime is murder. Wharton on Homicide, p. 594, sec. 380.

I refer in this connection to *Smith* v. *State*, 33 Me. 48; *Eril* v. *State*, 73 Ill. 329.

This doctrine, that where abortion is made by statute a felony, that then an abortion or attempted abortion which results in the death of the woman is murder, I submit by the following authorities: *People* v. *Huntington*, 128 Cal. 261; *People* v. *Blackwell*, 142 Cal. 259; *State* v. *Lodge*, 33 Atl. (Del.) 312; *State* v. *Alcorn*, 7 Idaho, 599; *Smith* v. *State*, 33 Me. 48; *Eril* v. *State*, 73 Ill. 329.

Section 1235 of the Code of 1906, makes the offense abortion the crime of manslaughter, and thus makes it a felony. The state thus having made the offense of abortion a felony, the death of a woman in such a case constitutes murder.

I, therefore, respectfully submit the question to the court whether or not under the common law rule of construction, interpretation, and application of statute of this character, the death of the woman does not therefore constitute the crime of murder.

COOK, J., delivered the opinion of the court.

The indictment in the present case, omitting the formal parts, is as follows: "That one Georgia Proctor, late of the county aforesaid, on the 1st day of April, A. D. 1911, with force and arms, in the county aforesaid, and within the jurisdiction of this court, then and there in and upon the body of one Carrie Hallbach, a human being, feloniously, willfully, and of her malice aforethought, did make an assault, and did willfully, feloniously, and of her malice aforethought, force, thrust, and strike a certain instrument, to the grand jurors unknown, which she, the said Georgia Proctor, had and held in her hand, up and into the womb and body of the said Carrie Hallbach, who was then and there pregnant with

child, with the criminal intent thereby to cause and pro-
cure, without legal justification, the said Carrie Hall-
bach to miscarry, thereby then and there inflicting on
the said Carrie Hallbach, in and about her womb and
other internal parts, certain bruises, wounds, and lac-
erations, and creating in the said Carrie Hallbach a mor-
tal sickness and feebleness of body, of which mortal
bruises, wounds, lacerations, sickness, and feebleness of
body she, the said Carrie Hallbach, did then and there
languish, and did then and there die."

The evidence tended to show that defendant performed
the acts set out in the indictment; and that the woman's
death resulted from the attempts to create a miscar-
riage.

The district attorney requested the following instruc-
tion: "The court instructs the jury that if they believe
from the evidence, beyond a reasonable doubt, that Geor-
gia Proctor, the defendant, in and upon the body of one
Carrie Hallbach, a human being, feloniously, willfully,
and of her malice aforethought, did make an assault, and
did willfully, feloniously, and of her malice aforethought,
force, thrust, and strike a certain instrument, to the
grand jurors unknown, which she, the said Georgia Proc-
tor, had and held in her hand, up and into the womb and
body of the said Carrie Hallbach, who was then and
there pregnant with child, with the criminal intent there-
by to cause and procure, without legal justification, the
said Carrie Hallbach to miscarry, thereby then and there
inflicting upon the said Carrie Hallbach in and about her
womb and other internal parts, certain mortal bruises,
wounds, and lacerations, and creating in the said Carrie
Hallbach a mortal sickness and feebleness of body, of
which mortal bruises, wounds, lacerations, sickness, and
feebleness of body she, the said Carrie Hallbach, did
then and there languish, and then and there did die,
then she is guilty of murder, and the jury may so find."

This instruction was refused by the court; but the

court did instruct the jury, if they believed the facts stated in the indictment they would convict defendant of the crime of manslaughter. There was a verdict of not guilty, and this appeal is predicated upon the theory that "a question of law had been decided adversely to the state" by reason of the court's refusal to give the instruction above set out.

It will be noted that the indictment is not the statutory indictment, but undertakes to set out the acts which it is alleged constitute the crime of murder. The gist of the charge is found in the words "with the criminal intent thereby to cause and procure, without legal justification, the said Carrie Hallbach to miscarry." The crime which defendant intended, and was endeavoring to commit, would be manslaughter, as defined by section 1235, Code 1906, if she had succeeded in accomplishing her design. Section 1233 was intended to meet such cases. The felony the defendant "was attempting to commit" was manslaughter, and in such attempt, it is alleged, she killed the mother.

Section 1234 has no application to the present case.