## LEE *v.* STATE.

[86 South. 856, No. 21256.]

1. HOMICIDE: *Death of woman from abortion either "murder" or "manslaughter."*

A person producing an abortion solely for the purpose of relieving the woman of the child which results in her death, though produced with her consent, is guilty of either murder or manslaughter, regardless of whether the child with which the woman was pregnant was quick; of "murder" under section 1227, Code of 1906, Hemingway's Code, section 957, if the act by which the abortion was produced is eminently dangerous to, or evinces a depraved heart regardless of, human life; "manslaughter" under section 1244, Code of 1906, Hemingway's Code, section 974, if the act by which the abortion was produced is not eminently dangerous to, and does not evince a depraved heart regardless of, human life.

2. HOMICIDE. *Statute prescribing form of indictment covers all homicides both statutory and common law.*

Section 1431, Code of 1906, Hemingway's Code, section 1187, which prescribes the form of an indictment for homicide, covers all homicides, both statutory and common law.

3. CRIMINAL LAW. *Testimony of deceased witness on committing trial may be proved although defendant charged with murder.*

On a trial for manslaughter the evidence of a deceased witness

who testified on the committing trial may be proven, although on the committing trial the defendant was charged with murder.

4. CRIMINAL LAW. *Harmless error as to statements in presence of jury no ground for new trial.*

  Statements in the presence of the jury by the judge and district attorney which might be prejudicial to the defendant are no ground for a new trial when the verdict returned by the jury 's correct.

APPEAL from circuit court of Alcorn county.

HON. C. P. LONG, Judge.

F. E. Lee was convicted of manslaughter, and he appeals. Affirmed.

*George T. Mitchell,* for appellant.

It was my contention in the court below, and was so conceded by the state and so held by the court in his written opinion that we have no statute covering the offense in question. If, therefore, the defendant could be prosecuted at all, it was by reason of some offense against the common law. The state conceded that the child was not quick at the time of the alleged abortion and therefore neither section 1234, Code 1906 or Hemingway's Code, section 965, are applicable. The court below in rendering his opinion on the motion to exclude, said that if it were not for section 1525, Code 1906, Hemingway's Code, section 1287, the state would necessarily have no case, and the motion would have to be sustained. Section 1525, Code 1906, Hemingway's Code, 1287, provides that "every offense not provided for by the statutes of this state shall be indictable as heretofore at common law." I insist, therefore, that as the offense for which this defendant was indicted was not a statutory offense, but was simply an offense at the common law, and that he could be held accountable only by reason of the above-mentioned section, he should have been indicted according to the common law and not according to the statute. The indictment in

this case is simply a statutory indictment, charging that the defendant did unlawfully, wilfully and feloniously kill and slay Mary Miller, a human being. The section above referred to says that for common-law offenses, not provided for by statute, the parties shall be indicted as heretofore at common law. It is unnecessary for me to cite authorities to the effect that the common law requires the pleader to insert in the indictment the manner and means by which the death was brought about.

"Where a statute merely declares the punishment of an offense known at common law and does not employ any descriptive terms, the indictment must be framed in accordance with common-law forms." 22 Cyc. 342, par. D.

In the case of *State* v. *Prude,* 76 Miss. 543, this court held that an indictment charging that the defendant "did feloniously kill and slay an unborn quick child of said Emma Prude" was not a good indictment under the code section for the reason that the manner and means were not set forth in the indictment. "In the absence of a statute obviating the necessity for such averments, the indictment must contain a statement of the manner and means of the killing." 21 Cyc. 841, par. D.

I have been unable to find any case in our reports where an indictment based upon a charge similar to this failed to set out the manner and means of the killing. In the case of *State* v. *Proctor,* 102 Miss. 792, 59 So. 890, the district attorney, proceeding under the common law, in recognizing that the common law required the manner and means of the killing to be set forth, specifically sets forth all the facts in regard to same. In the case of *Smith* v. *State,* 73 So. 793, where defendant was indicted for an attempted abortion, the district attorney charged specifically the necessary acts constituting the offense. I insist that no case can be found where an indictment has been held valid whether drawn under the statutes in question or according to the common law, that did not set out the manner and means of the killing.

It may be argued, however, that we should have demurred to the indictment in the court below, and that by failing to do so we have waived our right to question the form of the indictment. In answer to this, I simply say that the indictment as drawn was a correct indictment according to certain facts. We could not demur for the reason that the indictment upon its face was a good indictment. As was said by this court in the case of *State* v. *Peck*, 48 So. 819, where a statutory indictment was preferred:

"When the state offers its evidence to prove the crime, if it fail to make out a case, then the prosecution should be dismissed; but that is beyond the question presented here by either the demurrer or the motion to quash." In the court below, at the conclusion of the state's testimony, defendant made a motion to exclude the testimony because the charge in the indictment had not been substantiated. This motion covered everything. In the recent case of *Covington County* v. *Morris,* 84 So. 462, this court, in a civil case held that on request for a peremptory instruction, the defendant is not required to then and there point out specifically the reasons upon which he bases his request for the directed verdict but the request raises the point as to whether the plaintiff has proven his case in all of its essential requirements.

I submit, therefore, that we adopted the course provided by law and were entitled to the benefit of our objection to the indictment at the conclusion of the State's testimony, and that the indictment not being in accordance with the common-law form, was not sufficient and that our motion should have been sustained on that ground alone.

The next proposition to which I wish to address myself is that, conceding everything that the state contends for in this case, defendant was not guilty of any offense. However revolting and shocking it may be, we have no statute covering the performance of an abortion except where the child is quick. Until the child is quick, the destruction of the child does not constitute any offense against our

statutes. The only two sections we have are 1234, Code 1906, Hemingway's Code, 964, and section 1235, Code 1906, Hemingway's Code, 965. In both these sections it is specifically said that the child must be quick. All the testimony for the state shows conclusively that the child was not quick when the alleged operation was performed, and therefore, as was said by the court below in his written opinion and as was conceded by the state, no offense was committed against the statute laws of the state. In the *Prude case* and the *Peek case, supra,* the indictments specially charged that the child was quick. In the *Proctor case,* 102 Miss. 792, 59 So. 890, it was not stated as to whether or not the child was quick, but the point was not made in that case and I therefore take it for granted that it was conceded that the child was quick. Not being any offense against the statute laws of the state, the only remaining question is as to whether or not it constituted a violation of the common law. I submit that it did not. 1 Corpus Juris, page 312, par. 10. Our court has seen fit to align itself with the majority courts, because in the *Prude case, supra,* our court adopted the following announcement of the common law:

"An infant in the mother's womb, not being in *rerum natura,* is not considered as a person who can be killed within the description of murder, and therefore, if a woman being quick or great with child, take any potion to cause an abortion or if another give her any such potion, or if a person strike her, whereby the child within her is killed, it is not murder or manslaughter," Citing 3 Russell on Crimes, page 6; Wharton on Homicide (2 Ed.), sec. 303; Wharton's American Criminal Law (6 Ed.), sec. 942; McLain on Criminal Law, sec. 294; *Abans* v. *Foshee,* 66 Am. Dec. 91, and note. I submit therefore that the offense charged and attempted to be proven is not a violation of any statute or of the common law and that a motion to exclude the testimony for the state and direct a verdict for the defendant should have been sustained.

The court below went off on the idea that the alleged offense was contrary to good morals and that therefore some offense must necessarily have been committed. However strongly we may be in favor of upholding good morals, yet in the enforcement of the criminal law, unless a certain act is condemned either by the statute or the common law, no punishment can be inflicted, even though such act may be contrary to good morals.

The next proposition to which I wish to address myself is the action of the court below in permitting the state to introduce the testimony of B. H. Strong, since deceased, delivered at the preliminary trial of the matter before the justice of the peace, and to introduce in evidence the hotel register kept by said Strong at the Clopton Hotel. This court has held that the testimony of deceased witnesses delivered on a former trial, between the same parties, involving the same issue, and at a time when he is subject to cross-examination by the defendant, can be admitted in evidence. I submit that the testimony offered does not fall within the requirements of the law. In the trial before the justice of the peace the defendants were charged with murder, while in the present instance, the defendant was simply charged with manslaughter. In the case of *Dukes* v. *State,* 80 Miss. 353, one Welsh was assaulted and robbed by the defendant in that case.

At the preliminary hearing for the charge of robbery, Welsh testified before the justice of the peace. After that trial, Welch died and at the succeeding term of the circuit court in that county, the defendant was indicted for murder, Welch died from the effect of the wounds, inflicted upon him at the time the robbery was committed On the trial of defendant for murder in the circuit court, the testimony of Welch delivered in the committing trial was introduced in evidence over the objection of defendant and this court held that the issue in the preliminary trial on the charge of robbery was not the same as the issue in the circuit court when the murder charged was investigated. Our court in that opinion takes special care

to speak of the manifest caution and jealous care to preserve the constitutional guaranty that a defendant is entitled to be confronted by the witnesses against him. The court says:

"It must be perfectly clear that the issue, the offense charged, is substantially the same, so that the question asked to make out the one offense would be the same as those asked to make out the other, else the rule is not satisfied and the testimony is incompetent."

It cannot be successfully contended in this case that the issue in the preliminary trial where defendant was charged with murder and the issue in the circuit court when he was simply charged with manslaughter are the same. Questions asked to make out a charge of manslaughter might not be sufficient to make out a charge for murder, and questions asked to make out a charge of murder might not avail to make out a case of manslaughter.

I therefore respectfully submit that this testimony was not competent and that the admission of same, over defendant's objection, was reversible error.

*Fred Lotterhos,* attorney-general, for the state.

At the threshold the appellant presents the proposition that even though he had performed an abortion and death resulted, that he cannot be convicted of any crime based thereon because he maintains that under the statutes of Mississippi it is not unlawful to cause an abortion prior to the time that the foetus becomes quickened, and that at common law, it was neither crime nor misdemeanor to accomplish or attempt an abortion prior to the time of quickening, and that, accordingly he should not be held accountable for the death of the woman because the act charged to have been done by him was not unlawful. The correctness of this as a legal proposition is not conceded by the state. By statutes in Mississippi, "the willful killing of an unborn quick child, by an injury to the mother of the child, which would be murdered if

it resulted in the death of the mother, shall be manslaughter (section 984, Hemingway's Code) "and, every person who shall administer to any woman pregnant with a quick child any medicine, drug or other means, with intent thereby to destroy such child, and shall thereby destroy it, shall be guilty of manslaughter. unless the same shall have been advised by a physician to be necessary for such purpose (section 965, Hemingway's Code).

From these quotations it appears that the legislature of Mississippi has made no provisions by way of condemnation of the causing of an abortion prior to the time of quickening; but, by section 1287 of Hemingway's Code, it is provided that "every offense not provided for by the statutes of this state shall be indictable as heretofore by common law," and it is respectfully submitted that at common law it was a misdemeanor to cause an abortion prior to the time of quickening. If this be true, it follows that the death of Mary Miller, if caused by the act, procurement or culpable negligence of the appellant while he was engaged in the perpetration of a misdemeanor, or in the attempt to commit such crime or misdemeanor, was manslaughter (Hemingway's Code, sec. 963; from the text of first Corpus Juris, pp. 312 and 313.) It appears that at common law it is a criminal offense to cause or procure an abortion and indicates that there is conflict of authority as to whether a common-law offense is committed by causing or procuring with the consent of the woman. an abortion before the quickening. It appears that in some jurisdictions it has been held that at common law it was a crime to procure an abortion on a pregnant woman. even with her consent and before the child had quickened, and sets forth as the conclusion of the textwriter that, according to the great weight of authority, it was not an indictable offense at common law to procure an abortion before the woman had become quick. The state submits that at common law it was a misdemeanor to bring about such a result before quickening, and respectfully directs the court's attention in this regard to: *State* v. *Reed,* 45 Ark.

334; *State* v. *Slagle,* 82 N. C. 653; *State* v. *Slagle,* 83 N. C. 630; *Mills* v. *Commonwealth,* 13 Pa. 634; Bishop's Statutory Crime (3 Ed.), section 744, where it is stated that some have contended that if she consents, it is not indictable at common law unless she has arrived at a state of pregnancy termed "quick with child."

Hale and Coke have used these terms but not in connections denying that an offense may be committed at an earlier stage of pregnancy. Others reject this distinction and approve the language of Justice COULTER, in *Mills* v. *Commonwealth,* cited above, where he, (Justice COULTER) says: "It is not the murder of a living child which constitutes the offense but the destruction of gestation by wicked means and against nature. The moment the woman is instinct with embryo life and gestation has begun, the crime may be perpetrated." Mr. Bishop says: "This in principle seems to, be the reasonable and just doctrine." (Section 744, Bishop's Statutory Crime, 3rd Edition). Abortion is one of the leading offenses against population; therefore it is indictable at common law. See Bishop's New Criminal Law, volume 1, section 509.

The basis of condemnation of such an action being that it is a wrong against population it is difficult to understand how the courts at common law could have held that an abortion committed one day before quickening was innocent and a like act one day after quickening was criminal. It is persuasive of the view that those courts in several states and the textwriters who have held that abortion before or after quickening was a violation of the common law are correct in their reasoning. The wrong at common law was not against the child but against society. Therefore, the distinction based upon the progress of the pregnancy is without the reason of the rule. See *State* v. *Prude,* 76 Miss. 544, and the authorities there cited. Mr. Wharton in the 3rd Edition of his work on Homicide, paragraph 592, says that at common law the attempt to ecect an abortion whether the child *in utero* was quick or

not, and where that operation resulted in the death of the woman, was murder, or at least manslaughter.

If the charge here were that of having performed an abortion prior to quickening the solution of the question just discussed might be decisive of the matter. However, the charge here is of the slaying of the woman, and while if this court shall hold that such an operation was violative of the common law, it will be decisive in favor of the state of this phase of the case, a contrary view (to the effect that there was no wrong against the child or society at common law) would not warrant the discharge of the appellant or a reversal herein for the reason that an operation of the kind and at the place detailed in the evidence was a wrong against the woman; which, under the common law, her consent could not warrant and therefore, death resulting, necessarily is a punishable manslaughter.

That the performance of an operation by a one and one-half inch laceration under the sanitary conditions of a negro house of ill repute, with the intention to permit the woman to there remain through the period of recovery, notwithstanding the availability of a suitable operation room, was an assault on the woman of so deliberate a nature and so necessarily attended with great danger to the person as to prevent the woman's assent being taken as a lawful excuse. Of this the court has judicial knowledge. It is a matter of common knowledge that an operation for abortion or a natural miscarriage presents a serious apprehension of blood poisoning. At page 1057 of Fifteenth Ruling Case Law, we find that: "The court should take notice of whatever is or ought to be generally known, within the limits of their jurisdiction, for justice does not require that courts profess to be more ignorant than the rest of mankind."

This operation, which was performed for its manifest purpose, was so serious and deliberate an assault on the woman and threat againts her life that it became a wrong which made its perpetrator under the common law and under our statutes responsible for all the results that

might ensue, and it was an assault of that kind which assent has never condoned under the law. Hence this appellant was properly indicted for the death of the woman in view of its having resulted from his criminal action, even though he had no intent to kill the woman. See Hemingway's Code, sections 963 and 1287-974.

From time immemorial abortion has been a crime and by the judicial law of Moses, if. mischief followed the act, it was punishable with death. Exodus, chapters 21-22-23. From Russell on Crime, volume 1, Ninth Edition, section 740, it appears: "When a person gave medicine to procure an abortion or put a skewer into the womb for the same purpose and the woman died, the case was held to be murder; for though the death of the woman was not intended, the cause was of a nature deliberate and malicious and necessarily attended with great danger to the person on whom they were practiced."

Involuntary manslaughter, according to the old writers, is where death results unintentionally so far as the defendant is concerned from an unlawful act on his part, not amounting to felony. Hence it is involuntary man- 'slaughter where the death of another occurs through the defendant's negligence use of dangerous agencies. 1 Wharton's Criminal Law, Tenth Edition, sec. 305. In the same volume at section 323, it appears that manslaughter includes all cases where killing takes place in the execution of an unlawful design not involving such deliberate and malicious intent to kill.

The same author at section 316 says: "We might class attempts to produce miscarriage resulting in the death of the mother (as manslaughter). Killing of this nature when incidental to great bodily harm to the mother, or death to the child, has been held murder at common law," and at section 390 that: "If a pregnant woman be killed in an attempt to produce abortion in her, and it appears that the design of the operation was not to take the life of the mother, the offense has been held murder in the second degree. . . . This may be taken in all cases,

where the intent was not to do the mother bodily harm. Where there is no such intent, the proper course is to indict separately for manslaughter of the woman and for the perpetration of abortion. "Here the nature of the act was such that the law will presume an intent to do great bodily harm, and that the woman could not lawfully assent to the action." "If the assault be of a nature injurious to the public as well as to the party assaulted, the reasoning that assent condones does not apply." Mr. Wharton holds this to be the rule in section 636 of the same volume: "It is plain in principle and settled in legal authority as to offenses which do not require a specific intent that whenever a man meaning one wrong does another unmeant, he is punishable. Bishop's New Criminal Law, vol. 1, secs. 327-328.

Mr. Wharton in his work on Homicide, Second Edition, speaking of death resulting from an intent to produce a miscarriage says: "It is sufficient in order to sustain the ruling that killing the mother when attempting to cause her to miscarry, is murder at common law. It rests on the fact that such attempt involves a serious bodily harm to the mother." (Sections 41, 66, 192.) Then he says in section 318:

"A woman desires to miscarry of a child with which she is pregnant, and assents to an operation being performed on her for the purpose; and she dies from the operation, her assent, as we have already seen, is no defense to an indictment against the person performing the operation. If the intent was to kill or grievously injure her, the offense was murder; it is manslaughter if the intent was only to produce the miscarriage, the agency not being one from which death or great injury would be likely to result." See McLain's Criminal Law, sec. 1147 and *State* v. *Proctor,* 102 Miss. 792, wherein the charge of manslaughter was sustained where death resulted from an attempt to commit an abortion prohibited by the statutes of Mississippi on that subject.

From the foregoing I submit that if the appellant performed the operation shown by the evidence in this case, and death resulted therefrom, that he is subject to a conviction of manslaughter. The appellant complains that this conviction should not be sustained because the indictment was not according to the common law but was merely in the language of the statute, which position, as I see it, is not well taken, for the reason that the indictment does not purport to charge the commission of a crime or misdemeanor at common law, to-wit; an abortion, but charges the felonious killing of Mary Miller. "It was not necessary to set forth the manner in which, or the means by which the death of the deceased was caused, but it was sufficient to charge that the defendant did feloniously kill and slay the deceased." (Hemingway's Code, sec. 1187). See Bisop's New Criminal Procedure, vol. 3, pp. 1526-7.

By virtue of section 1431, Code of 1906, in an indictment for homicide it shall not be necessary to set forth the manner in which, or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder that the defendant did feloniously, wilfully and of his malice aforethought, kill and murder the deceased. And it shall be sufficient in an indictment for manslaughter, to charge that the defendant did feloniously kill and slay the deceased.

Thus we find that the legislature, for the sake of simplicity, has seen fit to nominate the essentials of an indictment, charging a felonious homicide. We respectfully submit that an indictment charging in the language of section 1431 is sufficient to sustain a conviction of manslaughter upon any of those cases of felonious homicide which were manslaughter at common law, and are now made manslaughter by the statute.

Under this statute we charge murder, and convict of it, on proof that the killing of the human being, without the authority of law, by any means, or in any manner, was done with deliberate design to effect the death of the person killed, or of any human being; done in the com-

mission of an act eminently dangerous to others, and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual; done without any design to effect death, by any person engaged in the commission of the crime of . . . or in the attempt to commit such felony." Code 1906, section 1227. Or we charge murder or manslaughter in the language of the statute (section 1431, Code 1906), and convict of manslaughter on proof that the felonious killing was . . . without malice . . . . Code of 1906, section 1236, unnecessary while resisting effort of slain person to commit a felony, Code 1906, section 1237, with a dangerous weapon in heat of passion. Code 1906, section 1238. The killing of a human being by the act, procurement or culpable negligence of the accused, and without authority of law, (not otherwise provided for by statute). Code of 1906, section 1244.

Here we have a conviction of homicide without malice, not excused or justified, in the judgment of the jury, which may be sustained without the inclusion of the element of intention to kill the person specifically charged to have been killed, and who was killed, and we do not return to the prolixity, profundity and difficulties of common-law pleading which situation the legislature sought to modify and relieve. This the court would not do, except the section be obnoxious to the constitution or some right given in natural justice. That the statute is not unconstitutional, see *Newcomb* v. *State*, 37 Miss. 383, and 22 Cyc., 285 and 286, where the text reads:

"Where a particular offense, such as homicide, is divided into degrees which are defined by statute, the indictment may follow the general form without specifying the elements which fix the particular degree, and still fulfil the requirements of informing defendants of the nature and cause of the accusation."

No hardship is worked on the defendant by the application of our statute and this rule, for the reason that the

defendant may have a bill of particulars, if he be not suffi-
ciently informed of the crime charged to enable him to
prepare for defense. That a bill of particulars may be
had in a proper case may be found in *Starling* v. *State,* 43
So. 952.

Conviction or acquittal under the indictment herein fur-
nishes the unquestionable support for a plea of former
jeopardy, upon any subsequent endeavor to prosecute the
appellant for the killing of Mary Miller. Having submit-
ted in brief what we conceive to be the correct reasoning
of this question, we submit as decisive the opinion of
this court in *Re Washington* v. *State,* 24 So. 309; *State*
v. *Peck,* 48 So. 819; *Lewis* v. *State,* No. 21164, 84 So. 146.

It is assigned that it was error to admit evidence on this
trial for manslaughter of the testimony of E. H. Strong,
deceased, who testified at the preliminary investigation
where this appellant was charged with this homicide as a
murderer. As I see it, this evidence was properly admit-
ted, the exact language of the deceased was shown, the pre-
liminary was for this particular homicide and the charge
was murder which was substantially the same as this
charge of manslaughter, and being of a higher grade, re-
moved the reason for the rule which precludes the intro-
duction of such evidence where the charges at the first
and second trial are different. When answering to the
charge of murder the defendant would be more likely to
propound the most exhaustive inquiries on a cross-exami-
nation. It is conceivable that after a first trial on a charge
of assault and battery that it might be said on the succeed-
ing trial for manslaughter or murder that although the
investigation was of the same homicide that the testimony
should not be admitted because the defendant would not
have been so thorough in his cross-examination where the
charge was a minor one and where elements that must
exist to sustain the higher charge were not involved. How-
ever, it has been held that in a case such as that just im-
agined that the testimony given at the assault and battery

trial could be introduced after the death of the witness in
a trial for murder.

*Dukes* v. *State,* cited by the appellant, presented a state
of facts quite different.  There the testimony sought to be
introduced because of the death of the witness in the homi-
cide case had been detailed by the witness in a trial predi-
cated of the charge of robbery.  The rule in Mississippi is
clear and is consistent with the common-law doctrine.  See
*Owens* v. *State,* 63 Miss. 450; *Lipscomb* v. *State,* 76 Miss.
254; *Dukes* v. *State,* 80 Miss. 359; *Holifield* v. *Laurel,*
50 So. 488, 96 Miss. 59.

The Lipscomb case makes clear the admissibility of the
evidence herein complained of.

SMITH, C. J., delivered the opinion of the court.

The appellant was tried and convicted on an indictment
charging him with manslaughter.

The indictment was in the language of section 1431,
Code of 1906, Hemingway's Code, section 1187, and al-
·leges simply that the appellant did feloniously kill and slay
the deceased," describing her by name.

The death of the deceased was caused by a surgical op-
eration performed on her for the purpose of producing an
abortion.  The jury were warranted in believing from the
evidence that the operation was peformed by the appel-
lant, a physician and surgeon, with the deceased's consent
for the purpose of relieving her of a fœtue which had not
become quick.  No necessity for relieving her of the foetus
was shown or claimed.

The appellant's assignments of error are to the effect
that the court erred:

First, in refusing to instruct the jury to find the appel-
lant not guilty;

Second, in not holding that the indictment was fatally
defective for the reason that it was not framed in ac-
cordance with the rules of the common law;

Third, in admitting certain testimony offered by the state; and,

Fourth, in permitting the district attorney to make certain statements to the jury in connection with the testimony of the witness Broomfield.

First. The grounds on which the appellant rests his right to a peremptory instruction, are, first, that the evidence does not warrant the finding that the operation which resulted in the death of the deceased was performed by him; and, second, that no crime is committed by producing an abortion upon a woman with her consent before the fœtus has become quick, though her death results therefrom.

The first of these contentions is wholly without merit.

The appellant's convictions must, of course, rest either upon a statute of this state, or upon the common law, and the contention of the appellant is that it can rest only on either section 1232, Code of 1906, Hemingway's Code, section 962, or section 1233, Code of 1906, Hemingway's Code, section 963, which provide that "the killing of a human being without malice, by an act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of," any misdemeanor or certain felonies, is manslaughter, and that it does not come within the terms of either for the reason that producing an abortion with the woman's consent before the fœtus has become quick is not a crime either at common law or under any statute of this state. It is true that the production of such an abortion is not prohibited by any statute of this state and the authorities are in conflict as to whether or not it is a crime at common law, but the appellant's guilt does not depend on either of these statutes, nor upon the criminality of such an operation, for under all of the authorities if an abortion results in the death of the woman it is, at common law, either murder or man-slaughter without reference to the state of the fœtus or the criminality of the abortion itself, for the reason that producing an abortion is a deliberate act, dangerous to

life and involving great bodily harm. 2 Whithaus & Beck-
ner, Medical Jurisprudence, 387; Elwell's Malpractice &
Med. Ev. 244; Wharton on Homicide (3d Ed.), section
378; 2 Cooley's Blackstone, 1366; 1 Hale's P. C. 429; 1
East's P. C. 230; 1 Russell on Crime (9th Ed.), 740;
*Regina* v. *Gaylor,* 1 D. & B. Crown Cases, 288; *State* v.
*Harris,* 90 Kan. 807, 136 Pac. 264, 49 L. R. A. (N. S.) 580;
*Peoples* v. *Commonwealth,* 87 Ky. 487, 9 S. W. 509, 810;
*Commonwealth* v. *Parker,* 9 Metc. (Mass.) 263, 43 Am.
Dec. 396; *State* v. *Moore,* 25 Iowa, 128, 95 Am. Dec. 776;
*People* v. *Sessions,* 58 Mich. 594, 26 N. W. 291.

If the act by which an abortion resulting in the death
of the woman is produced is eminently dangerous to, and
evinces a depraved heart regardless of human life, the
crime committed will be murder under the provisions of
section 1227, Code of 1906, Hemingway's Code, section 957;
but if it does not evince a depraved heart regardless of
human life, the crime committed will be manslaughter
under the provisions of section 1244, Code of 1906, Hem-
ingway's Code, section 974, which provides:

"Every other killing of a human being, by the act, pro-
curement, or culpable negligence of another, and without
authority of law, not provided for in this chapter, shall be
manslaughter."

The crime here under consideration comes within the
second of these classes. The case of *State* v. *Proctor,* 102
Miss. 792, 59 So. 890, is not here directly in point for it
does not appear from the report thereof that the woman
on whom the abortion was produced consented thereto.

Second. Section 1431, Code of 1906, Hemingway's Code,
section 1187, provides that—"In an indictment for homi-
cide it shall not be necessary to set forth the manner in
which or the means by which the death of the deceased
was caused, but it shall be sufficient . . . in an in-
dictment for manslaughter, to charge that the defendant
did feloniously kill and slay the deceased."

This section covers all indictments for homicide wheth-
er statutory or common law, and is not modified by section

1525, Code of 1906, Hemingway's Code, section 1287, which provides that—"Every offense not provided for by the statutes of this state shall be indictable as heretofore at common law"—the purpose of this statute being simply to recognize common-law offenses not provided for by statute.

Moreover, the offense here in question is, as hereinbefore stated, provided for by section 1244, Code of 1906, Hemingway's Code, section 974.

Third. Over the objection of the appellant the court below permitted the state to prove what a deceased witness had sworn to in the presence of the appellant on his preliminary trial before the committing magistrate on an affidavit charging the appellant with murder. The ground of the objection to this evidence is that the issues on the preliminary trial and on the one here in question are different, for the reason that in the first he was charged with murder, and in the second with manslaughter.. A charge of murder necessarily includes a charge of manslaughter, and on the preliminary hearing the question which the magistrate was called on to determine was whether the appellant should be held to await the action of the grand jury on either charge. The evidence here objected to therefore was competent.

Fourth. A negro physician who was jointly indicted with the appellant for the killing of the deceased was introduced as a witness for the state. On offering this witness the district attorney made the following statement: "The state here proposes to introduce a hostile and unwilling witness." An objection made to this statement by the appellant was overruled. The witness was then examined by the district attorney by means of leading questions without objection by the appellant to the form thereof. The answers of the witness were not satisfactory to the examiner, but disclosed neither hostility to the state nor unwillingness to testify on the part of the witness. The district attorney then again stated to the court without any apparent necessity for so doing, "The

state is introducing a hostile and unwilling witness," to which the trial judge replied: "But if you can't get him to testify anything, we can't make him testify anything." An objection made by the appellant to both of these statements was overruled. The district attorney then proceeded with the examination of the witness, and among other questions asked him to "state whether or not it is true that you had a conversation with Dr. Dilworth the morning after (the deceased) was operated on, upon the streets of Aberdeen, a day or two before the post mortem examination, in which you told him that you with Dr. Lee operated upon a young lady from Plattsburg for uterine pregnancy."

This question was objected to by the appellant and the objection was sustained. No claim was made by the district attorney that when he introduced the witness he expected his testimony to be other than it was.

The contention of the appellant in this connection is that the statements by the trial judge and the district attorney and the question propounded to the witness by the latter were calculated to cause the jury to believe that the witness was present at an operation performed by the appellant on the deceased for the purpose of producing an abortion; and also because the witness was a negro to inject race prejudice into the case.

No witness testified to having seen the appellant perform the operation and he himself denied having performed it, but the verdict of the jury is on the evidence not only clearly right, but had this witness not been introduced at all it is hardly probable that the jury would have arrived at any other. The errors here complained of therefore, conceding for the sake of the argument that such they are, were harmless.

Affirmed.